UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| SHERIDAN MORFORD, | ) | Case No. 2:09-cv-02251-RLH-PAL |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | (Mtn to Strike - Dkt. #39) |
| WAL-MART STORES, INC., et al., | ) | |
| Defendants. | ) | |

The court held a hearing on February 8, 2010, on Plaintiff's Motion to Strike Defendants' Answers or in the Alternative, for Adverse Presumption, Due to Defendants' Spoliation of the Floor Mar [sic] Which Caused the Plaintiff's Fall (Dkt. #39) filed on December 17, 2010. Alexander Leveque appeared on behalf of the Plaintiff, Brandon Smith appeared on behalf of Defendant Wal-Mart, and Jonathan Hansen appeared on behalf of G & K Services, Co. Defendant Wal-Mart Stores, Inc. ("Wal-Mart") filed a Response (Dkt. #43) on January 10, 2011. No response was filed by Defendant G&K Services Company. The court has considered the Motion, the Response, and the Reply, and the arguments of counsel at the hearing.

**DISCUSSION**

**I.    Factual Background.**

This case arises out of a trip and fall accident at a Wal-Mart store in Pahrump, Nevada, on January 11, 2009. Plaintiff was shopping in the produce section, and alleges she tripped on a floormat that was bunched up, causing her to injure her knees and left shoulder. Both Plaintiff and Wal-Mart employee Karen Snell prepared an incident report on the date of the accident. A Wal-Mart employee took photographs of the mat while Plaintiff was still on the floor, and Wal-Mart preserved the video surveillance tape of the incident.

1    On February 17, 2009, Plaintiff's counsel, Adam S. Kutner, sent a letter to Wal-Mart's claims

2    office indicating he was representing the Plaintiff regarding a claim for injuries sustained in an

3    automobile collision occurring on January 11, 2009. The letter requested that all future communication

4    regarding the handling of his client's claim go through his office, and that his letter be acknowledged.

5    *See* Exhibit "J" to opposition. On February 20, 2009, Wal-Mart's claims examiner responded to Mr.

6    Kutner's letter denying the claim, indicating the investigation into the matter indicated no negligence on

7    the part of Wal-Mart Stores, Inc. *See* Exhibit "4" to Plaintiff's motion. A similar letter was sent by

8    Wal-Mart's claims examiner to the Plaintiff on March 10, 2009. *See* Exhibit "5" to Plaintiff's motion.

9    Plaintiff retained new counsel who sent Wal-Mart a letter on March 20, 2009, indicating he represented

10   her for injuries sustained in the January 11, 2009 trip and fall. The letter requested that Wal-Mart

11   preserve all documents, incident reports, witness statements, photographs, video recordings, diagrams

12   or other drawings, and any other physical evidence of the accident, including the mats on the floor in

13   the produce section. *See* Exhibit "6" to Plaintiff's motion. The letter also requested an opportunity to

14   inspect the physical evidence relating to the accident. *Id*.

15   The floormats in the produce department of Wal-Mart's Pahrump, Nevada store were not owned

16   or maintained by Wal-Mart. At the time of the incident, G & K had a contract with Wal-Mart to replace

17   the floormats in the store every week. Neither Wal-Mart nor co-Defendant G & K kept the actual

18   floormat involved in this incident. As a result, Plaintiff argues the court should strike the Defendants'

19   Answers, or find that liability is established and preclude the Defendant from offering any evidence

20   regarding the condition of the mat. In the alternative, Plaintiff asks that the court issue an adverse

21   inference instruction informing the jury that they may presume that the floormat which was destroyed or

22   not preserved would have contained evidence adverse to Wal-Mart.

23   **II.    The Parties' Positions.**

24   **A.    Plaintiff's Motion to Strike (Dkt. #39).**

25   Plaintiff asserts that Wal-Mart received clear, early notice of Plaintiff's injuries and their cause

26   and therefore had a duty to preserve evidence, including the floormat. Despite being on notice of its

27   duty to preserve, Wal-Mart destroyed the mat before Plaintiff had the opportunity to inspect it. Plaintiff

28   contends that Wal-Mart's policy of only preserving photographic and video evidence in slip/trip and fall

2

1   cases is intended to hinder Plaintiff's efforts to gather evidence for trial.  Greg Forsythe, the person

2   Wal-Mart produced as most knowledgeable about its policies regarding preservation of evidence

3   following accidents, testified at his deposition that Wal-Mart only preserves pictures and video

4   evidence and would not have kept the mat on which Plaintiff tripped.  Plaintiff contends that she is

5   prejudiced by Wal-Mart's failure to preserve the floormat because: (a) her expert has been denied the

6   opportunity to inspect the mat; (b) the mat could have been used as an exhibit at trial; and (c) she has

7   been deprived of the opportunity to contest Wal-Mart's description of the mat's condition.

8           As a result of Wal-Mart's willful destruction of evidence, Plaintiff asserts the court should strike

9   Wal-Mart's answer.  Alternatively, Plaintiff suggests the court order that liability in this case is

10  established and limit the trial to questions of the Plaintiff's damages.  In the alternative, Plaintiff asks

11  the court to give an adverse inference instruction against Wal-Mart because: (a) it had possession of the

12  mat and was placed on notice of the possibility of litigation on January 11, 2009, the day of the

13  accident; (b) it was negligent and willful when it destroyed the mat; and (c) the mat contained

14  information relevant to Plaintiff's claims.

15          **B.      Wal-Mart's Response (Dkt. #43).**

16          Wal-Mart responds that Plaintiff reported she tripped and fell over a bunched up mat, but did

17  not allege there was any defect in the mat before filing her Complaint on June 16, 2009.  Wal-Mart did

18  not own or maintain the mats, and at the time the Complaint was filed, no longer had possession of it.

19  At the time of the accident, Wal-Mart had a contract with Defendant G & K to replace the floormats in

20  the store once a week.  Thus, at most, Wal-Mart had possession of the mat for up to seven days after

21  Plaintiff fell.  Wal-Mart had no reason to retain the mat itself because Plaintiff did not claim that there

22  was anything wrong with the mat.  Additionally, Wal-Mart's Manager, Karen Snell, observed the mat,

23  filled out an incident report, and did not observe any defect or abnormality in it.  Wal-Mart preserved

24  evidence of this incident by taking incident reports and witness statements, and also preserved the video

25  surveillance footage available for the incident area.  The initial letter of representation received by Mr.

26  Kutner's office did not request preservation of the floormat, and it was not until March 20, 2009 that

27  current counsel asked Wal-Mart's claims representative to preserve the mats on the floor of the produce

28  section on the date of the incident.  This letter was sent more than two-and-a-half months after the mat

1  was removed from the store pursuant to Wal-Mart's contract with G & K.  Under these circumstances,

2  Wal-Mart argues it had no duty to preserve evidence of the temporary condition of the floormat which

3  Plaintiff alleged caused her trip and fall, and spoliation sanctions are not appropriate.

4          **C.      Plaintiff's Reply (Dkt. #46).**

5          Plaintiff replies that Wal-Mart was aware the floormat was relevant to the manner in which

6  Plaintiff fell, "and that it consciously and deliberately took no measures to preserve it."  Plaintiff states

7  Wal-Mart's awareness of the mat's relevance is evidenced by the fact that it took pictures of the mat,

8  performed an inspection of the mat, and reported the condition of the mat in its Incident Report.

9  Plaintiff states that her testimony concerning the condition of the mat is not conclusive because she did

10  not have an opportunity to see the bottom of the mat and could not reasonably be expected to examine

11  the mat after her injury.  Finally, Plaintiff contends, the mat is relevant to the cause of her injury, and

12  Wal-Mart's policy of not preserving physical evidence after a slip and fall case is designed to give it an

13  evidentiary advantage at trial.  As a result, Wal-Mart should be sanctioned for spoliation of the

14  floormat.

15  **III.     Law and Analysis.**

16          Spoliation is the destruction or significant alteration of evidence or the failure to preserve

17  property for another's use as evidence in pending or reasonably foreseeable litigation.  *United States v.*

18  *Kitsap Physicians Svs.,* 314 F.3d 995, 1001 (9th Cir. 2002) (*citing Akiona v. United States,* 938 F.2d

19  158, 161 (9th Cir. 1991) (a party engages in spoliation "as a matter of law only if they had 'some notice

20  that the documents were potentially relevant' to the litigation before they were destroyed")); 7-37A

21  *Moore's Federal Practice - Civil* § 37A.55.  A party must preserve evidence it knows or should know is

22  relevant to a claim or defense of any party or that may lead to the discovery of relevant evidence.

23  *Moore's* at § 37A.55; *see also United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir.

24  2002); *In re Napster*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) (*citing Nat'l Ass'n of Radiation*

25  *Survivors v. Turnage,* 115 F.R.D. 543, 556-57 (N.D. Cal. 1987) (noting, "[a]s soon as a potential claim

26  is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know

27  is relevant to the action")).  The duty to preserve arises not only during litigation, but also extends to the

28  period before litigation when a party should reasonably know that evidence may be relevant to

4

1    anticipated litigation. *In re Napster,* 462 F.Supp.2d at 1067 (duty to preserve begins when a party

2    should have known that the evidence may be relevant to future litigation).

3         District courts may impose sanctions for spoliation of evidence as part of their inherent power to

4    "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Napster*,

5    462 F.Supp.2d at 1066 (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  Courts may

6    sanction parties responsible for spoliation of evidence in three ways.  First, a court may instruct the jury

7    that it may draw an adverse inference against a party or witness responsible for the destruction or

8    spoliation of evidence.  *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).  Second, a court

9    may exclude witness testimony based upon the destroyed evidence and proffered by the party

10   responsible for destroying the evidence.  *Id.* at 1329.  Third, the court may dismiss the claim of the

11   party responsible for destroying the evidence.  Dismissal, however, is only appropriate where "a party

12   has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings."

13   *Leon v. IDX Systems Corp.,* 464 F.3d 951, 958 (9th Cir. 2006) (*citing Anheuser-Busch, Inc. v. Natural*

14   *Beverage Distributors,* 69 F.3d 337, 348 (9th Cir. 1995).  Before imposing the "harsh sanction" of

15   dismissal, a court must consider the following factors: (a) the public's interest in expeditious resolution

16   of litigation; (b) the court's need to manager its dockets; (c) the risk of prejudice to the party seeking

17   sanctions; (d) the public policy favoring disposition of cases on their merits; and (e) the availability of

18   less drastic sanctions.  *See Leon,* 464 F.3d at 958 (*citing Anheuser-Busch*, 69 F.3d at 348).

19        At the time of the accident the Plaintiff did not claim that there was any defect or abnormality in

20   the floormat or rug on which she tripped and fell.  Rather, she stated she tripped on the rug after

21   stopping her cart "to go to apples."  Photos of the incident depicting the floormat, cart and Plaintiff

22   were taken before the Plaintiff got up.  Wal-Mart preserved video surveillance footage available for the

23   area of the incident.  Plaintiff did not claim that she saw anything wrong with the floormat.  Wal-Mart

24   employee, Karen Snell, testified that she responded to the area while the Plaintiff was still sitting on the

25   floor.  Ms. Snell asked her what happened, filled out the paperwork, and asked Plaintiff if she needed

26   assistance.  The Plaintiff stated she had tripped on a rug in the produce department after stopping her

27   cart to get apples, and tried to catch herself on the cart.  Ms. Snell observed that the rug by the

28   Plaintiff's cart was "bunched up."  Ms. Snell freed the cart from the rug, flattened it out and it

continued to be used in the produce department after the incident. Neither the Plaintiff, nor Ms. Snell observed any "defects" or anything unusual or abnormal about the floormat other than it was "bunched up" underneath Plaintiff's cart. Under these circumstances, Wal-Mart was not on notice of any claims that the floormat was frayed, damaged or "defective" at the time of the accident, and therefore not required to preserve the actual floormat involved in this accident. The floormat was changed out in the ordinary course of business pursuant to a contract with its outside vendor, co-Defendant G & K, five months before Plaintiff filed a Complaint asserting the floormat was defective.

The Ninth Circuit has held that a party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) (no indication that evidence destroyed with knowledge that it was relevant to litigation) (*citing United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001-02 (9th Cir. 2002) (no spoliation where evidence destroyed in normal course of business and no indication that relevant to anticipated litigation); *State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.,* 425 F.3d 708, 720 (9th Cir. 2005) (same). Here, Wal-Mart did not "destroy" the floormat involved in this incident. Rather, it is undisputed that after the accident, the floormat was smoothed and left in place. It was replaced in the normal course of business by Wal-Mart's outside vendor. Wal-Mart preserved evidence of the incident by taking photographs, witness statements and preserving the available video surveillance footage of the incident. Because the mat was removed from the store in accordance with Wal-Mart's normal course of business, and Wal-Mart was not on notice of any claim that the mat itself was defective, Wal-Mart had no duty to preserve it, and no spoliation occurred.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Strike (Dkt. #39) is DENIED.

Dated this 8th day of February, 2011.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE