# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SHERIDAN MORFORD, | |
|                Plaintiff, | Case No. 2:09-cv-02251-RLH-PAL |
| vs. | **ORDER** |
| WAL-MART STORES, INC., *et al.*, | (Mot/in Limine - Dkt. #49) |
|                Defendants. | |

The court conducted a hearing on March 29, 2011 on Defendant G&K Services' Motion *In Limine* to Exclude Plaintiff's So-Called "Mat" Expert, Tom Jennings (Dkt. #49), which was referred to the undersigned for a decision by the district judge. The court has considered the motion, Defendant Wal-Mart's Joinder (Dkt. #55), Plaintiff's Response (Dkt. #56), Defendant G&K's Reply (Dkt. #58), Defendant Wal-Mart's Joinder in G&K's Reply (Dkt. #61), Reply (Dkt. #62), Plaintiff's Exhibit 5 to Motion (Dkt. #66), and the arguments of the counsel at the hearing. Following arguments of counsel, the court took the matter under advisement to review the entire transcript of Mr. Jennings' deposition.

## BACKGROUND

This is an action filed by Plaintiff Sheridan Morford to recover from personal injuries sustained in a slip-and-fall accident on January 11, 2009 at a Wal-Mart store in Pahrump, Nevada. Plaintiff alleges she tripped and fell on a floor mat in the produce section of the store, and that the mat, placed and maintained by Defendant G&K Services, was defective, unsafe, and caused the fall.

In the current motion, Defendant G&K seeks to strike the expert report and proposed testimony of Plaintiff's expert, Tom Jennings, on the grounds the opinions he has offered in his written reports, and at his deposition are not admissible under Federal Rule of Evidence 702 and do not meet the Supreme Court's test for admissibility as expert opinions under *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 79 (1993). G&K argues that Mr. Jennings' opinions are speculative and unsupported because Jennings failed to actually inspect a mat similar to the one involved in this incident. His initial May 25, 2010, report was based on erroneous information provided by the Plaintiff following an inspection at the Wal-Mart store on May 6, 2010, and his Supplemental Report dated September 22, 2010, "is just about as useless." Defendant G&K also argues that Mr. Jennings offered new opinions at his deposition which are nothing more than the "hopes and dreams" that he "pulled out of thin air." Specifically, Mr. Jennings testified at his deposition that "the width of the leading beveled edge of the mat was only 5/8th of an inch wide, and it should have been 1 to 1½ inches wide; (2) the height of the leading beveled edge of the mat was 1/16th of an inch, and it should have been no more than 1/32nd of an inch high; and (3) the mat used in the area where the Plaintiff fell was too light-weight duty a mat for the area where it was placed. G&K argues that all of these opinions are not scientifically reliable and do not meet the *Daubert* standard because Mr. Jennings performed no scientific tests to reach these opinions and testified there were no industry standards on which his opinions were based. Rather, he testified his opinions were based on his experience and not on any outside information. G&K also argues that his written reports made false assumptions rendering his opinions and his methods equally unreliable to establish a foundation for his proffered testimony. To the extent Mr. Jennings' opinions might be permissible, G&K contends they are not the "product of reliable principles and methods reliably applied to the facts of this case or that they have any demonstrably sound or reliable foundation."

  Wal-Mart filed a one sentence joinder agreeing with the arguments and points and authorities submitted by Defendant G&K.

  Plaintiff opposes the motion, asserting that it is undisputed that the floor mat involved in Plaintiff's accident was owned by Defendant G&K Services and placed in the Wal-Mart store at the time of the accident. Plaintiff also argues that it is undisputed that the floor mat was not preserved by either Wal-Mart or G&K after the accident and is not available for inspection. Plaintiff filed a Motion to Strike (Dkt. #39), seeking to strike Defendant's answer, or in the alternative, for an adverse inference jury instruction, based on Defendants' spoilation of the floor mat. However, the court denied the motion, finding Wal-Mart did not have a duty to preserve the floor mat involved in the accident because

1   Wal-Mart was not on notice of any claim that the mat itself was defective and merely replaced it in the
2   ordinary course of its business.  *See* Order (Dkt. #50) entered February 11, 2011.
3           Plaintiff argues that on May 6, 2010, she made a request pursuant to Fed.R.Civ.P. 34 to allow
4   Plaintiff's expert, Mr. Jennings, to conduct an inspection of the Wal-Mart store in Pahrump in the area
5   where the fall occurred and to examine an exemplar mat.  Mr. Jennings and the Plaintiff were at the
6   store on May 6, 2010.  During this site inspection, the Plaintiff told Mr. Jennings the floor mats in place
7   in the area where the fall occurred were not the same as the ones that were in place at the time of the
8   accident.  A 3x10 mat was presented for inspection, but the Plaintiff did not believe it was the same size
9   as the one involved in her fall.  As a result, Mr. Jennings did not examine it more closely or perform
10  any tests.
11          A subsequent site visit was conducted in September 7, 2010, and Plaintiff and Mr. Jennings
12  were shown a 3x4 mat.  He understood that the 3x4 mat appeared to be identical in all respects except
13  for the size of the one involved in Plaintiff's accident.  It had a rubber edging measuring 5/8 of an inch.
14  Mr. Jennings performed a test to determine the likelihood of a shopping cart wheel causing the floor
15  mat to bunch up.  He did this based on the assumption that the mat G&K brought on the September
16  inspection was the same type of mat involved in Plaintiff's fall, although shorter.  Mr. Jennings took the
17  rear wheel of a grocery cart and ran it next to the beveled edge of the mat in his test.  When he did so, at
18  least half of the time it caused the beveled edge of the mat to move inward and the carpet to bunch.
19  After the September 7, 2010, site visit, he prepared a supplemental report that identified the evidence on
20  which he relied as well as his primary conclusions.
21          Plaintiff took the deposition of a G&K representative, Adam Petty, on July 1, 2010, after Mr.
22  Jennings made his first site inspection.  At the deposition, Plaintiff learned that G&K had two primary
23  suppliers for floor mats placed in the Wal-Mart stores and that G&K had three sizes of mats, with eight
24  different colors.  Mr. Petty was shown a photograph of the mat depicted in the fall and testified it
25  looked like a 3x10 floor mat which would have come from either Mountville Mills or Miliken.  He was
26  unable to identify which of the two companies manufactured the rug depicted in the photograph.
27          Mr. Jennings prepared a preliminary report after his initial site inspection and supplemented that
28  report after his second site inspection in September 2010.  His supplemental report relied on Plaintiff's

answers to Wal-Mart's interrogatories, Mr. Jennings' conversation with the Plaintiff, the Wal-Mart accident report, the Adam Petty deposition transcript, the deposition of Mitchell Medina and examination of a 3x4 mat provided by G&K's attorney, as well as forensic testing Mr. Jennings conducted of the mat and grocery cart. Based on his examination of these materials, he arrived at the conclusions that: (1) the floor mat in place at the time of Plaintiff's incident was approximately 3x10 feet; (2) the left rear wheel of the shopping cart caused the floor mat to bunch up; (3) the 5/8 inch edge of the floor mat was unreasonably short; (4) a wider edge of 1 to 1¼ inches minimizes the risk of the mat edge catching on a shopping cart wheel; and (5) the floor mat in use was not suitable for both pedestrian and mechanical traffic.

Plaintiff argues that Mr. Jennings has specialized knowledge which is admissible under Federal Rule of Evidence 702 and that vigorous cross-examination of his testimony, as well as presentation of contrary evidence, is the appropriate means of attacking his proposed evidence. Plaintiff contends that Mr. Jennings has specialized knowledge which qualifies him as an expert, that he relied upon reasonable methods and principles to formulate his opinions, and that his opinions will assist the trier of fact.

Defendant G&K replies that "it is hotly disputed" whether the Plaintiff tripped and fell on a floor mat, as opposed to some other cause, such as catching her foot on the shopping cart wheel or because of a medical condition. Counsel for G&K believes that the Plaintiff herself may have caused the "bunching" of the floor mat underneath her grocery cart observed at the time of her fall, and memorialized in photographs in this case. The reply reiterates G&K's arguments that Mr. Jennings proposed testimony is based on assumptions and speculation. Although G&K acknowledges that Mr. Jennings has some qualifications, it argues his opinions lack any actual basis in fact, and that his testimony will not be helpful to the jury because it lacks any scientific, technical, or other specialized knowledge necessary for admission. G&K therefore asks that the court grant the motion *in limine* striking his opinions and precluding him from testifying at trial.

///
///
///

# DISCUSSION

## I. Motion *in Limine*

A motion *in limine* is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. *Black's Law Dictionary* defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." *Black's Law Dictionary*, 1038-39 (8th ed. 2004). Although the Federal Rules of Evidence do not explicitly authorize a motion *in limine*, the Supreme Court has held that trial judges are authorized to rule on motions *in limine* pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 at n.4 (1984).

A motion *in limine* is a request for the court's guidance concerning an evidentiary question. *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion *in limine* should not be used to resolve factual disputes or weigh evidence. *C & E Services, Inc., v. Ashland Inc.*, 539 F.Supp.2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion *in limine*, the evidence must be inadmissible on all potential grounds. *Ind. Ins. Co. v. Gen. Elec.Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004); *Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554 (N.D. Ill. 2008); *Wilkins v. K-Mart Corp.*, 487 F.Supp.2d 1216, 1218-19 (D. Kan. 2007); *Allen v. City of N.Y.*, 466 F. Supp. 2d 545, 548 (S.D.N.Y. 2006). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions *in limine* may save "time, cost, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins*, 487 F.Supp.2d at 1219.

It is well-established that a district court's ruling on a motion in limine "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the . . . proffer." *Luce*, 469 U.S. at 41; *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F.Supp.2d 191, 200 (S.D.N.Y. 2006). "Denial of a motion *in limine* does not necessarily mean that all evidence

contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d at 846.

## II.     Expert Opinion Testimony

In *Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576 at 586 (10th Cir. 1998), the Tenth Circuit succinctly noted there are two requirements that parties seeking to offer expert testimony must satisfy. First, the witness must be an expert. Second, the expert testimony must assist the trier of fact. Fed.R.Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Id.*

Rule 702 was amended in 2000 to respond to the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 502 U.S. 579 (1993), and its progeny. *See* Fed.R.Evid. 702 Advisory Committee Note to 2000 Amendments. In *Daubert*, the Supreme Court held that the *Frye* test[1] for admitting scientific expert testimony which required that a scientific technique be "generally accepted" as reliable in the scientific community, was superceded by the adoption of the Federal Rules of Evidence. *Daubert*, 509 U.S. at 587. The *Daubert* decision also made clear that the Federal Rules of Evidence impose a "gatekeeping" obligation on the trial courts to ensure that proffered evidence is relevant and reliable. *Id*. at 789. The Supreme Court provided a list of four non-exclusive factors which a district court *may* consider in the discharge of its gatekeeping duties: (1) whether the theory or technique can be tested; (2) whether it has been subject to peer review and publication; (3) the known or potential error rate of the theory or techniques; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Id*. at 592-94.

///

---

[1] *Frye v. United States*, 293 Fed. 1013, 1014 (D.C. Circuit 1923).

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court clarified that the trial court's gatekeeping function is not limited to "scientific" expert testimony, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 526 U.S. at 141. The *Kuhmo Tire* decision also held that the trial court " may consider one or more of the more specific factors that *Daubert* mentioned when doing so will determine that testimony's reliability." *Id*. The *Daubert* factors, however, were not intended to be exhaustive, or to apply in every case. *Id.* at 158. The trial judge must have considerable leeway in deciding how to determine whether expert testimony in a particular case is reliable, "[t]hat is to say, a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Id.* at 152. A district court's discretionary rulings on whether to receive or exclude evidence, including expert testimony, will be reversed only if "manifestly erroneous." *General Elec. Co. v. Joiner*, 522 U.S. 136, 142. The decision whether or not to admit expert testimony is left to the discretion of the district court. *See United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000) (district court's decision to admit expert testimony reviewed for abuse of discretion). The district court not only has broad discretion to decide *whether* to admit expert testimony, but the court also has broad discretion to determine *how* to test an expert's reliability. *See Kuhmo Tire,* 526 U.S. at 152 (stating "[t]he trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable").

The objective of *Daubert's* gatekeeping requirement is "to ensure the reliability and relevance of expert testimony." *Id.* at 152. The trial judge must determine at the outset, pursuant to Rule 104(a) whether the expert will testify to scientific knowledge that will assist the trier of fact, and "this entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. A district court has an initial gatekeeping duty to "ensure that an expert's testimony 'is not only relevant, but reliable'" (*quoting Daubert*, 509 U.S. at 597). The test of reliability is flexible, and "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Alatorre*, 222 F.3d at 1101 (*quoting Kumho Tire,* 526 U.S. at 141-42).

7

Whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter within the broad discretion of the trial court. *Kuhmo Tire,* 526 U.S. at 153.

The Ninth Circuit has held that "in considering the admissibility of testimony based on some other specialized knowledge, Rule 702 generally is construed liberally." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir.), *cert. denied*, 530 U.S. 1268 (2000) (internal citation omitted). In *Hankey*, the Ninth Circuit held that the admissibility of expert opinion testimony generally turns on the following preliminary question of law determinations by the trial judge under Fed. R. Evid. 104(a):

> (1) whether the opinion is based on scientific, technical, or other specialized knowledge; (2) whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue; (3) whether the expert has appropriate qualifications–*i.e.* some special knowledge, skill, experience, training or education on the subject matter; (4) whether the testimony is relevant and reliable; (5) whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury); (6) whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time.

*Id* at 1168. "One very significant fact" is whether the expert has developed his or her opinions exclusively for purposes of testifying. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1317 (9th Cir.), *cert denied*, 516 U.S. 869 (1995) ("*Daubert* II"). This is because "a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." *Id*.

In *Hankey*, the court found a police officer was qualified to testify as an expert on gangs' "code of silence" based on his years of experience as an undercover officer working with gangs. *Id*. at 1169. The court stated, "[t]he *Daubert* factors (peer review, publication, potential error rate, etc.,) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Id*. Relevant reliability concerns may focus upon personal knowledge or experience rather than upon scientific foundations. *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir. 1998) (upholding the admission of expert testimony from law enforcement officer regarding jargon of narcotics trade on basis of expert's training, experience, and personal knowledge).

To admit expert testimony under Rule 702, the trial court must determine first, that it will assist the trier of fact, *i.e.*, that it is relevant. *Diviero v. Uniroyal Goodrich Tire Co.,* 114 F.3d, 851, 853 (9th Cir. 1997). Second, the evidence must be reliable. *Id.* The test of reliability and relevance is flexible,

and "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Alatorre*, 222 F.3d at 1102 (*quoting Kumho Tire*, 526 U.S. at 141-42). However, the court's "gatekeeping inquiry must be tied to particular facts" of a case. *Id*. at 150. "Rule 702 demands that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." As the Ninth Circuit has observed, an opinion based on unsubstantiated and undocumented information "is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998).

In order to be admissible, an "expert opinion must be supported by an adequate basis in relevant facts or data." *Stratosphere*, 66 F. Supp. 2d at 1188 (*citing* Michael H. Graham, 2 *Handbook of Federal Evidence* § 702.1, p.29 (4th ed. 1996); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (upholding district court's exclusion of conclusions in expert report with only 'scant basis' in the record)). Similarly, a California district court held that proffered expert testimony concerning a patient's medical condition fourteen years earlier, based only upon the patient's self-report to the experts, was "unsupported speculation." *Goomar v. Centennial Life Ins. Co.*, 855 F. Supp. 319, 326 (S.D. Cal. 1994).

Other courts have generally held that an expert's opinion "should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Blake v. Bell's Trucking, Inc.*, 168 F. Supp. 2d 529, 532 (D. Md. 2001). *See also Coleman v. Dydula*, 139 F.Supp.2d 388, 390 (W.D.N.Y. 2001) (finding expert testimony reliable where it has 'a traceable, analytical basis in objective fact'); *Rogers v. Ford Motor Co.*, 952 F.Supp. 606, 615 (N.D. Ind. 1997) (holding that in deciding whether to admit expert testimony, district court must rule out subjective belief or unsupported speculation); *Collier v. Varco-Pruden Bldgs.*, 911 F. Supp. 189, 192 (D.S.C. 1995) (holding expert's opinion should be excluded when it is based on assumptions which are speculative and not supported by the record); *Guillery v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (holding court properly excluded expert testimony not based on facts in the record, but based on altered facts and

1  speculation designed to bolster one party's position); *Damon v. Sun Co.*, 87 F.3d 1467, 1474 (1st Cir.
2  1996) (holding expert should not be permitted to give an opinion that is based on conjecture or
3  speculation from an insufficient evidentiary foundation); *Fedorczyk v. Carribean Cruise Lines, Ltd.*, 82
4  F.3d 69, 75 (3d Cir. 1996) (if expert opinion is based on speculation or conjecture, it may be stricken);
5  *Casas Office Mach., Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668, 681 (1st Cir. 1994) (holding
6  district court may exclude expert testimony where it finds that the testimony has no foundation or rests
7  on obviously incorrect assumptions or speculative evidence); *Jones v. Otis Elevator Co.*, 861 F.2d 655,
8  662 (11th Cir. 1988) (holding relevant testimony from expert is admissible only if the expert knows of
9  facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or
10 speculation); *but see Primrose v. Philadelphia Dressed Beef Co.*, 252 F. Supp. 595, 597 (D. Pa. 1966)
11 (opinion based on stated assumed facts is admissible); *Sphere Drake Ins., PLC v. Trisko*, 226 F.3d 951
12 (8th Cir. 2000) (attacks on foundation of expert's opinion go to weight rather than admissibility).
13     The trial court "is not required to hold a Rule 104(a) hearing" before considering proffered
14 expert testimony "but rather must merely make a determination as to the proposed expert's
15 qualifications." *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124 (9th Cir. 1994). Similarly,
16 although it may be appropriate in some cases, the trial court is not obligated in fulfilling its gatekeeping
17 responsibilities to hold a separate hearing before trial and may defer its evidentiary determinations until
18 trial. *Alatorre*, 223 F.3d at 1099. There, the Ninth Circuit stated that there is nothing prejudicial to a
19 party in reserving a ruling on the admission of opinions and conclusions of an expert until offered at
20 trial when all of the necessary foundation must be proved and the adequacy of the showing made will
21 be determined before questions asking for opinions and conclusions will be permitted. *Id*. at 1103
22 (*citing United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999).
23     **III.   Analysis**
24     G&K does not dispute that Mr. Jennings has specialized knowledge, training and experience in
25 slip and fall incidents. Rather, G&K seeks to exclude his testimony as speculative and unsupported
26 because he failed to actually inspect the mat similar to the one involved in the incident with the
27 Plaintiff. However, it is undisputed that the actual mat involved in the accident was not available for
28 inspection. It was replaced in the ordinary course of business when neither Wal-Mart nor G&K was on

notice that Plaintiff had any claim the mat itself was defective or caused the accident. It is also undisputed that G&K's Rule 30(b)(6) designee, Adam Petty, testified that G&K had two primary suppliers for floor mats placed in Wal-Mart stores, and that he was unable to identify which of two manufacturers manufactured the rug depicted in the photograph of Plaintiff's accident. A reasonable inference from this testimony is that the mats manufactured by the two entities are so similar in appearance and composition that not even G&K's Rule 30(b)(6) representative can tell them apart. Wal-Mart and G&K are the only parties in this case in a position to identify an exemplar mat for Plaintiff's expert to examine. However, G&K was unable to produce an exemplar from the same manufacturer. Thus, Plaintiff and her expert were deprived of an opportunity to examine and test the actual mat involved in the accident. They were also deprived of an opportunity to examine an exemplar of the mat involved in the accident because G&K, who was in a superior position to know, could not identify the manufacturer of the mat.

   The court agrees that a number of the preliminary opinions expressed in Mr. Jennings' preliminary report of May 25, 2010, are indeed speculative and unsupported. At the time he made a site visit on May 6, 2010, the Plaintiff told him the floor mats that were in place at the store were of a different size and color than the one involved in the accident. Mr. Jennings' preliminary report indicates he did not know if the floor mats in place at the time of the accident had been preserved by defense counsel for Wal-Mart or G&K. He asked Plaintiff's counsel to find out if it was possible to obtain a mat identical to the one involved in the accident, and was told that an effort would be made to inspect one in the near future. His preliminary opinions and conclusions were that it is "possible the floor mat involved was unsafe and/or not properly maintained." He also opined that floor mats used in commercial retail establishments must be constructed so that the mats lie flat when exposed to foot and/or shopping cart traffic. If not, they bunch, and "a trip and fall by the shopper is a distinct possibility." He also opined, based on his conversation with the Plaintiff, that it appeared she was operating the cart in a safe manner, and that if contact with shopping cart wheels was sufficient to cause the mat to "bunch" than "it is quite likely that this condition would have caused the potential" for the Plaintiff to trip and fall. After the initial visit, counsel made arrangements for a second site visit. The court has reviewed Mr. Jennings' deposition in its entirety, and it is unclear who made the decision to

present a smaller 3x4 mat to Mr. Jennings to examine, or what representations, if any, were made concerning its similarity to the one involved in Plaintiff's accident.

Mr. Jennings was deposed November 18, 2010, and was examined at length. He testified that has been qualified as an expert in court on four or five prior occasions in the field of pedestrian safety issues in slip and fall and trip and fall cases. He has testified "on issues relating to floor mats in terms of conditions, type, that sort of thing." His *curriculum vitae* was provided to counsel, and a copy is attached as an exhibit to Plaintiff's response. Mr. Jennings has been a registered professional engineer in the State of California since 1976, and has a California college teaching credential in the field of Occupational Safety & Health. He has taken a number of training courses conducted by federal OSHA. He has also taken a number of courses specifically involving slips, trips and falls, one of which was put on by the National Safety Counsel.

From March 2009 to the present, he has served as an expert witness and forensic consultant. He has been a safety consultant, a safety officer, an occupational safety and health consultant, and a supervising industrial safety engineer since 1972. As the president and Principal Engineer of Cal/Nev Safety & Health, Inc., he has provided safety and occupational health consulting services to government, industrial, and business clients. He served as a safety engineer for the county of Santa Cruz from 1985 to 1991, and was responsible for establishing and monitoring occupational safety and health programs. He also served as a safety expert to the Office of County Counsel for liability issues while employed by the County of Santa Cruz. He served as an occupational safety and health consultant to the City of Santa Ana, California, between 1978 and 1985, and provided occupational safety and health consulting services to government, industrial, and business clients, including forensic services in civil cases to both plaintiff and defense lawyers. Between 1965 and 1972, he served as a safety engineer for Fireman's Fund Insurance Company. At his deposition, he testified that for six of the seven years with Fireman's Fund, his job was to put safety presentations together for OSHA and liability issues for fire safety, "that sort of thing," including slip and fall incidents. Fireman's Fund was one of the major property casualty firms at the time.

At his deposition, he was questioned about the two site visits and the opinions expressed in his preliminary May 25, 2010, report, and subsequent September 2010 report. The court will not

summarize each of the opinions he provided in his ninety-nine-page deposition. In essence, he testified that the type of mats used in the Wal-Mart store were too flimsy for use in an area of pedestrian and cart traffic, and he was aware of other, more suitable, heavier mats with wider edges that were available in the market place. He testified that in his years of experience in the industry, slip and falls in retail stores have been an issue for more than forty years, and he has been taught to make sure that the mats are a proper weight, the proper texture, and that they are not going to slip and slide. He acknowledged that he was not aware of any nationally recognized standards for floor mats. He explained the basis of his opinion that the beveled edge on the 3x4 exemplar mat he was presented with on the second site inspection was not wide enough for use in an area used for pedestrian and cart traffic. He states that running a grocery cart over the mat, it was not difficult for him to get the edges to bunch. He opined that in areas in which floor mats have mechanical traffic, *i.e.* people are pushing carts, a floor mat like the exemplar he was shown "is simply not substantial enough, and the beveled edge is not wide enough." He based this opinion on his education, experience and training over many years of investigating accidents where people had tripped over carpeting on the floor. He estimated he had investigated two or three hundred such incidences in the past forty years involving supermarkets and wholesale food places. He testified that "every time somebody trips on one of those things it's generally because it doesn't fit flush to the floor, or the beveled edge and the weight or substance of the carpet is too light to allow for either heavy pedestrian traffic–and certainly too light to allow for cart traffic when you get this set of circumstances presented."

He explained that he served as a safety consultant at Safeway stores in California for many years, and that one of the concerns was to make sure that the floor mat was "substantive enough, wide enough, and fit flush enough with the floor for the edge. Those are always the three primary considerations." He testified that his opinions were based on his training and experience in working with floor mat issues for the last forty years as a safety consultant, as a safety engineer, and as an instructor on premises liability issues.

Having reviewed the entirety of Mr. Jennings' deposition transcript, the court will deny Defendants' motion in limine to exclude all of Mr. Jennings' testimony. The court cannot say from the record presented that his testimony is inadmissible on all potential grounds. The scope of his opinion

testimony should be deferred until trial when the trial judge will be able to determine questions of foundation, relevancy and the value and reliability of the proffered testimony.  Mr. Jennings unquestionably has specialized knowledge.  The Ninth Circuit has recognized, there is nothing prejudicial to a party in reserving a ruling on the admission of opinions and conclusions of an expert until offered at trial when all of the necessary foundation must be proved and the adequacy of the showing made will be determined before questions asking for opinions and conclusions will be permitted.  This is especially true where, as here, the actual mat involved in the accident was not preserved, and the Defendants themselves cannot identify the manufacturer of the mat involved in the accident.  Moreover, attacks on the foundation of the expert's opinion generally go to weight rather than admissibility, and it is for the jury to determine the expert's credibility.  Finally, the role of the trial court is not to determine whether the trial court agrees with the expert's proffered testimony, only whether it is sufficiently relevant and reliable to be admitted under Rule 702.

For all of the foregoing reasons,

**IT IS ORDERED** the Motion in Limine is **DENIED**.

Dated this 9th day of June, 2011.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE